

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ALBRITTEN,<br><br>        Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. CV 17-0925-JPR<br><br>**MEMORANDUM DECISION AND ORDER REVERSING COMMISSIONER** |

## I. PROCEEDINGS

Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security disability insurance benefits ("DIB"). The parties consented to the jurisdiction of the undersigned under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed December 21, 2017, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is reversed and this action is remanded for further proceedings.

## II. BACKGROUND

Plaintiff was born in 1960. (Administrative Record ("AR") 43.) He completed 12th grade (AR 212) and worked as a "salesman" (AR 45-46, 212).

On June 22, 2012, Plaintiff applied for DIB, alleging that he had been unable to work since January 1, 2010, because of coronary artery disease, a "massive" heart attack, angioplasty, percutaneous coronary intervention, depression, anxiety, and insomnia. (AR 94, 110, 183.) He later amended his onset date to June 15, 2012, the date of his heart attack. (AR 41-42.) After his application was denied initially (AR 125) and on reconsideration (AR 130), he requested a hearing before an Administrative Law Judge (AR 135). A hearing was held on August 4, 2015, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. (AR 37-92, 159-60.) In a written decision issued August 11, 2015, the ALJ found Plaintiff not disabled. (AR 16-30.) Plaintiff sought Appeals Council review (AR 11), which was denied on December 5, 2016 (AR 1-8). This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at

401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

## IV. THE EVALUATION OF DISABILITY

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A. The Five-Step Evaluation Process

The ALJ follows a five-step evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful

activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, the claimant is not disabled and his claim must be denied. § 404.1520(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. § 404.1520(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform his past work; if so, he is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. § 404.1520(a)(4)(v); Drouin,

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

4

```
 1  966 F.2d at 1257.  That determination comprises the fifth and
 2  final step in the sequential analysis.  § 404.1520(a)(4)(v);
 3  Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.
 4       B.   The ALJ's Application of the Five-Step Process
 5       At step one, the ALJ found that Plaintiff had not engaged in
 6  substantial gainful activity since June 15, 2012, the alleged
 7  amended onset date.  (AR 18.)  At step two, he concluded that
 8  Plaintiff had the following medically determinable severe
 9  impairments: "status post . . . myocardial infarction and status
10  post stenting of the left anterior descending coronary artery."
11  (AR 19.)  At step three, he determined that his impairments did
12  not meet or equal a listing.  (AR 22.)  At step four, he found
13  that Plaintiff had the RFC to perform the full range of sedentary
14  work (AR 22) and concluded that he could perform his past
15  relevant work as a "hospital admitting clerk," DOT 205.362-018,
16  1991 WL 671710, as actually and generally performed but could not
17  perform his past work as a "salesperson" (AR 26).  Accordingly,
18  he found Plaintiff not disabled.  (Id.)
19  V.   DISCUSSION
20       Plaintiff argues that the ALJ's step-four determination was
21  unsupported by substantial evidence.  (J. Stip. at 6-7.)  There
22  was "no evidence," Plaintiff contends, that he "ever performed
23  the work of a hospital admitting clerk," and the ALJ erred by
24  "identifying" that position by its "least demanding function."
25  (Id. at 7.)  For the reasons discussed below, remand is warranted
26  based on the ALJ's step-four errors.
27       As an initial matter, Defendant argues that Plaintiff's
28  challenges are "foreclosed" under Shaibi v. Berryhill, 883 F.3d
```

1102 (9th Cir. 2017) (as amended Feb. 28, 2018). (J. Stip. at 14.) Shaibi held that "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." 883 F.3d at 1109 (citing Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended)). Both Shaibi and Meanel involved claimants who failed to raise an issue to either the ALJ or the Appeals Council and therefore forfeited it. See id.; Meanel, 172 F.3d at 1115.

Issues raised to the Appeals Council but not to the ALJ are not forfeited. See Lamear v. Berryhill, 865 F.3d 1201, 1206 (9th Cir. 2017) (distinguishing Meanel in part because "unlike the claimant in Meanel, [plaintiff] raised this issue to the Appeals Council"); see also Ross v. Comm'r of Soc. Sec. Admin., No. 6:16-cv-00903-AA, 2018 WL 263639, at *2 (D. Or. Jan. 2, 2018) ("Lamear stands for the proposition that the failure to raise an issue at the hearing can be remedied by raising it to the Appeals Council."). Although Plaintiff failed to raise his past-relevant-work concerns to the ALJ (see generally AR 37-92), in his appeal to the Appeals Council he did (see AR 284-85 (arguing that he "never worked as a 'hospital admitting clerk,' and ha[d] no past relevant work experience as a 'hospital admitting clerk'")). He thus did not forfeit his present challenge. See Lamear, 865 F.3d at 1206.

A.  The ALJ Incorrectly Classified Plaintiff's Past
    Relevant Work
    1.  Applicable law

At step four, a claimant has the burden of proving that he cannot return to his past relevant work as actually or generally performed in the national economy. § 404.1520(f); Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002); Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). Although the burden of proof lies with the claimant, the ALJ still has a duty to make factual findings to support his conclusion. Pinto, 249 F.3d at 844. In particular, the ALJ must make "specific findings" as to the claimant's RFC, "the physical and mental demands" of the past relevant work, and whether the RFC would permit a return to his past work. See id. at 845 (citing SSR 82-62, 1982 WL 31386, at *4 (Jan. 1, 1982)); accord Ocegueda v. Colvin, 630 F. App'x 676, 677 (9th Cir. 2015).

In defining a claimant's past relevant work as actually performed, the ALJ may use "a properly completed vocational report" and "the claimant's own testimony." Pinto, 249 F.3d at 845 (citations omitted). To ascertan the requirements of occupations as generally performed in the national economy, the ALJ may rely on VE testimony or information from the DOT. SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000) (at steps four and five, SSA relies "primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy" and "may also use VEs . . . at these steps to resolve complex vocational issues"); SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982) ("The [DOT] descriptions can

be relied upon — for jobs that are listed in the DOT — to define the job as it is usually performed in the national economy." (emphasis in original)).

When a job is a "composite" — that is, it has significant elements of two or more occupations and therefore has no counterpart in the DOT — the ALJ considers only whether the claimant can perform his past relevant work as actually performed. See Soc. Sec. Admin., Program Operations Manual System (POMS) DI 25005.020(B), http://policy.ssa.gov/poms.nsf/lnx/0425005020.

When a VE provides evidence at step four or five about the requirements of a job, the ALJ has a responsibility to ask about "any possible conflict" between that evidence and the DOT. See SSR 00-4p, 2000 WL 1898704, at *4; Massachi v. Astrue, 486 F.3d 1149, 1152-54 (9th Cir. 2007) (holding that application of SSR 00-4p is mandatory). When such a conflict exists, the ALJ may accept VE testimony that contradicts the DOT only if the record contains "persuasive evidence to support the deviation." Pinto, 249 F.3d at 846 (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)); see also Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) (finding error when "ALJ did not identify what aspect of the VE's experience warranted deviation from the DOT").

2. Relevant background

Plaintiff was a "salesman" for Men's Warehouse until May 2009 (AR 46, 234, 277) and a "sales director" for Shoreline Care Center, a skilled nursing home, from June 2009 through January 2010 (AR 45, 76, 234, 277). In his work-history report, he

described his duties at Shoreline as "visit[ing] adult daycare facilities and other healthcare facilities" and "me[eting] with discharge planners at local hospitals to determine if patients met the qualifications to be admitted to our facility." (AR 235.) On a "work background" form, he described his duties as "visit[ing] hospitals or other facilities to get business for Shoreline." (AR 277.)

At the August 2015 hearing, the ALJ confirmed with Plaintiff that his work at Shoreline involved "me[eting] with discharge planners at local hospitals to determine if patients must meet the qualifications to be admitted to [the] facility" and "visit[ing] adult daycare facilities and other facilities," repeating Plaintiff's work-history-report description. (See AR 47.) The ALJ also confirmed with Plaintiff that even though his position was "sales director," he was "really just a salesman." (Id.) Plaintiff explained that he "would basically go visit" facilities and give "gift cards," "business cards," and "informational" pamphlets to "doctors" or "nurses at the hospitals." (AR 47, 76.) "It wasn't like [he] did a presentation," Plaintiff testified: he would "just walk into the office and give a pamphlet or business card or a gift card." (AR 76.) When specifically asked if it was "a sales job," he said, "Right. . . . Basically, it was sales." (Id.)

Before the VE testified, the ALJ "want[ed] to note in the record" that he had "found" the job "admitting officer," DOT 205.162-010, 1991 WL 671707, as potentially applicable to Plaintiff's past work but clarified that he would "rely on [the VE's] testimony only." (AR 82.) The VE classified Plaintiff's

9

work at Men's Warehouse as a "salesperson for men's furnishings," DOT 261.357-054, 1991 WL 672424 (AR 85, 87-88), and as to his work at Shoreline, the VE testified that "it can be a sales director or it can be admitting officer" (AR 85). The ALJ told her that she was the "expert" and it was "[w]hatever [she'd] like." (Id.) "[B]ecause [Plaintiff was] out and around," she testified, his work would be classified as a "sales manager," DOT 163.167-018, 1991 WL 647311. (AR 86.)

The ALJ asked whether it mattered that "he was not a manager in that position," and the VE responded that his work could also be compared to a "hospital admitting clerk," DOT 205.362-018, 1991 WL 671710. (AR 86, 88.) The ALJ asked if that position would "be the same as the other admitting officer"; she responded, "It has some of both."[2] (AR 86.) The ALJ responded, "[L]et's put both down" (id.), and asked the VE and Plaintiff's counsel whether "salesperson for men" and "med admitting" were "the only two" past-relevant-work positions they were "using" (AR 87-88). The VE responded, "Yes." (AR 88.) And Plaintiff's counsel responded, "Okay. Yes." (Id.)[3]

---

[2] An admitting officer is defined as a medical-services position involving the coordination of activities relating to the "admission of patients" in a "hospital or other medical facility." 1991 WL 671707. A hospital admitting clerk shares some of the same functions as an admitting officer but requires more patient and patient-representative interviewing. See 1991 WL 671710. Unlike a hospital admitting clerk, an admitting officer "[m]ay perform duties" of a supervisor, and it has a reasoning level of four as opposed to three for hospital admitting. Compare 1991 WL 671707, with 1991 WL 671710.

[3] It is not clear whether when the VE described a position as having some characteristics "of both," she was referring to both a salesperson and a hospital admitting clerk or to a hospital admitting clerk and an admitting officer. The ALJ

10

The VE was asked by the ALJ whether a hypothetical person
with a sedentary RFC and Plaintiff's age and education would be
able to perform his past relevant work as "med admitting." (AR
88-89.) She testified that such a person would be able to do so,
"both as performed and in the national economy." (AR 89.) The
ALJ did not ask whether such a person could also perform other
jobs in the economy, nor did the VE testify to any. The ALJ had
asked the VE at the start of her testimony to explain any
deviations from the DOT, and she said she would. (AR 84.)

         3.   Analysis

          The ALJ found Plaintiff capable of performing his past
relevant work as "hospital admitting clerk as actually and
generally performed." (AR 26.) This conclusion, the ALJ
specified, was "consistent with the credible testimony of the
vocational expert at the hearing." (Id.) Indeed, the VE
concluded as much (see AR 88-89 (referring to "med admitting" by
DOT number for hospital admitting clerk)), but substantial
evidence did not demonstrate that Plaintiff performed any
hospital-admitting functions as part of his past relevant work.
See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1166
(9th Cir. 2008) (finding that ALJ's classification of claimant's
past relevant work was not supported by substantial evidence,
warranting remand).

          As defined by the DOT, a "hospital-admitting clerk"
"[i]nterviews incoming patient[s] or representative[s] and enters
information required for admission into [a] computer," among

---

appears to have interpreted it as the former, however.

other administrative duties. 1991 WL 671710. But Plaintiff's position at Shoreline involved no such tasks. He testified that it was "a sales job" (AR 76) and that he was "really just a salesman" (AR 47). He "visited" adult-daycare facilities and local hospitals, "met" with "discharge planners," nurses, and doctors and gave them gift cards, business cards, and informational pamphlets to "get business" for his employer. (AR 47, 76, 235, 277.) At no point did he report interviewing patients or their representatives, entering patient information into a computer, or performing any other hospital-admitting function specified in the DOT. See 1991 WL 671710.

Moreover, the hospital-admitting position is defined as sedentary work, id., and Plaintiff's past work as actually performed clearly required traveling to different locations and moving around (see AR 47, 76, 235, 277). Despite the ALJ's affirmative duty to resolve apparent conflicts between the VE's testimony and the DOT, see Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015), the ALJ did not clarify why the hospital-admitting classification was appropriate. That was error. See Carmickle, 533 F.3d at 1167 ("[T]he ALJ always 'has a duty to make the requisite factual findings to support his conclusion' at step four." (quoting Pinto, 249 F.3d at 844)).

Defendant contends that the VE's testimony amounted to substantial evidence supporting the classification. (See J. Stip. at 14.) But when defining a job as actually performed a claimant's testimony is "highly probative." See Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993); see also Pinto, 249 F.3d at 845. Plaintiff's testimony flatly contradicted the VE's

testimony to the extent the latter suggested that his past relevant work could be classified solely as a hospital admitting clerk. See Vertigan v. Halter, 260 F.3d 1044, 1051-52 (9th Cir. 2001) (finding that "no substantial evidence" supported ALJ's finding that claimant's "past relevant work included work as a cashier" because "vocational reports she filled out" and her "testimony made clear that she had never exclusively worked as a cashier").

At most, the VE's testimony suggested that Plaintiff's past work was a composite position involving sales and hospital-admitting functions. (See AR 86.) As such, the ALJ was required to find that he could perform it "as actually performed." See POMS DI 25005.020(B). The ALJ ostensibly did so (AR 26), but that finding was limited to hospital admitting alone and did not acknowledge the composite nature of the job. The ALJ therefore erred. See Lingenfelter v. Colvin, No. 3:14-cv-00202-MMD-VPC, 2015 WL 2194310, at *7 (D. Nev. May 11, 2015) (finding that ALJ erred when VE testified that claimant's past work was "hybrid" job but ALJ analyzed only whether he could perform one component of that hybrid and thus incorrectly found him not disabled).

The ALJ's step-four error was not harmless. He found that Plaintiff could not perform his only other past work, as a "salesperson of men's furnishings." (AR 26.) He also made no step-five finding, and the VE testified to no other available jobs. See Lamb v. Colvin, No. 1:13-cv-00137 GSA, 2014 WL 3894919, at *6 (E.D. Cal. Aug. 4, 2014) ("[H]ad the ALJ proceeded to step five of the sequential disability analysis, the Court possibly could have found the step-four error to be harmless.");

13

see also Tommasetti, 533 F.3d at 1042 ("Although the ALJ's step four determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five."). Thus, given the ALJ's lack of relevant findings in addition to his step-four error, it is unclear whether he would still have found Plaintiff not disabled had his past relevant work been properly analyzed. See Robbins, 466 F.3d at 885 (error harmless when "it was clear from the record" that it was "inconsequential to the ultimate nondisability determination" (citation omitted)). Remand is therefore warranted.

     B.    Remand for Further Proceedings Is Appropriate

Plaintiff contends that the Court should reverse and "remand for the payment of benefits." (J. Stip. at 13.) But when an ALJ errs, the Court "ordinarily must remand to the agency for further proceedings." Leon v. Berryhill, 880 F.3d 1041, 1045 (9th Cir. 2017) (as amended Jan. 25, 2018); see also Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended); Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

Here, further administrative proceedings would serve the useful purpose of allowing the ALJ to reconsider Plaintiff's past relevant work at Shoreline and make sufficient findings regarding its classification. If he finds that the position was composite, he can then determine whether Plaintiff's RFC precludes such past relevant work as actually performed, whether any other work in the national economy exists that he could do, or, if applicable, whether he would be disabled under the grids.[4] Thus, remand is

---

[4] Plaintiff suggests that the grids mandate a finding of disability because he was a person "approaching advanced age,"

appropriate. See Garrison v. Colvin, 759 F.3d 995, 1020 n.26 (9th Cir. 2014); Pinto, 249 F.3d at 847-48 (holding remand appropriate for ALJ to clarify step-four finding when he "made very few findings and relied largely on the conclusions of the vocational expert," which made it "difficult . . . to review his decision").

## VI. CONCLUSION

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[5] IT IS ORDERED that judgment be entered REVERSING the Commissioner's decision, GRANTING Plaintiff's request for remand, and REMANDING this action for further proceedings consistent with this memorandum decision.

DATED: June 14, 2018

*signature*

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

had a "12th grade education," and had "no transferrable skills" as "found" by the "state agency." (J. Stip. at 12-13 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, R. 201.14).) But neither the ALJ nor the VE found that Plaintiff lacked transferable skills, and the state-agency reviewer who did had classified his past work at Shoreline as "Admitting Officer," DOT 205.162-010, 1991 WL 671707, which like the hospital admitting position was not necessarily supported by substantial evidence. Thus, remand is appropriate to clarify the vocational ambiguity. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224-26 (9th Cir. 2009) (remanding so that "ALJ c[ould] further develop the record and make specific findings on whether [plaintiff] ha[d] transferable skills"); Heller v. Astrue, No. CV 08-4701 AGR, 2009 WL 2095992, at *2-3 (C.D. Cal. July 14, 2009) (remanding for further proceedings when ALJ "did not find whether [plaintiff] had transferable skills").

[5] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."